**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John A. Dowdle, Jr., M.D.,

Plaintiff,

v.

National Life Insurance Company,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-2346 ADM/JSM

---

Kurtis A. Greenley, Esq., and Bert J. McKasy, Esq., Lindquist & Vennum, P.L.L.P., Minneapolis, MN, appeared for and on behalf of Plaintiff.

Terrance J. Wagener, Esq., Krass Monroe, P.A., appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On July 30, 2003, the Motion for Partial Summary Judgment [Docket No. 27] of Plaintiff John A. Dowdle, Jr., M.D. ("Plaintiff" or "Dr. Dowdle"), and the Motion for Summary Judgment [Docket No. 35] of Defendant National Life Insurance Company ("Defendant" or "National Life") were argued before the undersigned United States District Judge. The issue presented is Plaintiff's entitlement to total disability benefits under his Disability Income Policy (the "Disability Policy") and his Professional Overhead Expense Disability Policy (the "Expense Policy") issued by Defendant. For the reasons set forth below, Plaintiff's Motion is granted and Defendant's Motion is denied.

## II. BACKGROUND

Dr. Dowdle completed his residency in orthopedic surgery in 1979. During the relevant time frame, Dr. Dowdle practiced orthopedic surgery with, and was a shareholder of, Summit

FILED AUG 28 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Orthopedics, Ltd., in St. Paul, Minnesota. In the year 2000, Dr. Dowdle's orthopedic surgery practice concentrated on spine and back surgery. He was on the staff of approximately eight different hospitals and was a member of several national and local orthopedic surgery societies. In 2000, Plaintiff asserts that approximately 85% of his practice involved surgical and surgical-related care. Pl.'s Mem. in Supp. at 4.

On December 31, 1987, Dr. Dowdle obtained the Disability Policy from National Life. Dowdle Aff. Ex. C. The application form required Dr. Dowdle to identify his "Occupation" for which the disability insurance would apply, and Dr. Dowdle designated "Orthopaedic Surgeon." Id. ¶¶ 14, 15, Ex. B (Disability Policy). This policy is a general disability policy under which Dr. Dowdle would be entitled to benefits if he became "unable to perform the material and substantial duties of an occupation" due to accidental injury. Id. Ex. B at 1 (emphasis added). Such a policy applies to "any occupation for which the Insured is or becomes reasonably fitted by education, training or experience." Id.

Dr. Dowdle also purchased for an additional premium "riders" to the Disability Policy.[1] Id. at 110-12. The first of these is an "Own Occupation Rider." Dowdle Aff. Exs. C, D. This rider changes the definition of "occupation" as given by the Total Disability provision of the Disability Policy to read as follows: "An occupation means the occupation of the Insured at the time a disability, as defined in the Total Disability provision of the policy, begins." Id. (emphasis added). The parties agree that this rider converts the Disability Policy into an occupational disability policy (as opposed to a general disability policy). See Def.'s Mem. in Opp. at 4. An

[1] The policy and its riders are treated as one instrument. Dowdle Aff. Exs. C, D (Own Occupation Rider 1).

occupational disability policy "insures against disability to engage in the insured's specific usual occupation." Weum v. Mutual Benefit Health & Accident Ass'n, Omaha, 54 N.W.2d 20 (Minn. 1952).

Dr. Dowdle also purchased a "Rider for Residual Disability Income Benefit"[2] ("Residual Rider"). Dowdle Aff. Ex. B. This rider provides residual disability coverage for "partial disabilities." Id. By its terms, the insured is partially disabled if unable to "perform one or more of the important daily activities of an occupation as defined in this policy; or [unable] to engage in an occupation . . . for as much time as was usual prior to the start of the disability." Id. (Residual Rider).

On June 30, 1988, Dr. Dowdle was also issued a "Professional Overhead Expense Disability Policy" ("Expense Policy"). Dowdle Aff. Ex. F. Dr. Dowdle identified his occupation on the application as "Orthopedic Surgery." Id. The purpose of this coverage was to provide ongoing overhead expenses during periods when Dr. Dowdle was disabled. Specifically, it applied if Dr. Dowdle was "unable to perform the material and substantial duties of [his] occupation" due to accidental injury or sickness. Id. Specifically, "occupation" was defined in the Policy as "the occupation of the Insured at the time such disability begins." Id.

On September 9, 2000, Dr. Dowdle was injured in an airplane accident. As a result of his accident, Dr. Dowdle suffered a closed head injury and a right calcaneal (heal bone) fracture. The injuries to his right foot and ankle rendered him fully disabled from performing surgery in any capacity due to his permanent inability to stand for more than 45 minutes or sit for more than

[2] This rider is also treated as "one instrument" with the Disability Policy. Dowdle Aff. Ex. 1 (Residual Rider).

an hour to an hour and a half. Id. Ex. G (Case Record of Dr. Lowell D. Lutter, M.D.). Dr. Lowell D. Lutter, M.D., Dr. Dowdle's treating physician, opined: "John A. Dowdle by virtue of the calcaneal fracture and peroneal tendon tear is disabled from performing Orthopaedic Surgery." Id. An independent medical evaluation by Dr. Mark C. Gregerson, M.D., resulted in the same conclusion. Id. Ex. H. It is undisputed that Dr. Dowdle is unable to perform orthopedic surgery and that Dr. Dowdle's Disability and Expense Policies were in effect on September 9, 2000.

Dr. Dowdle has been entirely disabled from performing any orthopedic surgery since his September 9, 2000 accident. However, several months after the injury, Dr. Dowdle returned to office consultation at Summit Orthopedics, handling office visits and consultation, but doing no surgery. Dowdle Aff. ¶ 24. As a result, National Life advised Dr. Dowdle on March 14, 2001: "We find you are no longer eligible for disability benefits under the total disability provision of your contract effective with your return to office consultations on 2/7/01." Id. ¶ 26.

After his injury and return to the office, Dr. Dowdle's earned revenue diminished substantially and he became unable to cover overhead costs. Id. Accordingly, on October [illegible], 2001, Dr. Dowdle was discontinued as a shareholder of Summit Orthopedics, Ltd., and became an independent contractor with Summit. Id. ¶¶ 24-25, Ex. I. The parties dispute whether or not Dr. Dowdle is entitled to total disability benefits under the terms of his Disability and Expense Policies under circumstances where he is unable to perform surgery but able to conduct office consultations and other non-surgical tasks.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). Here, the parties agree that summary judgment is appropriate because the material facts at issue are undisputed. See Def.'s Mem. in Supp. at 1.

"The general rule is that a policy of insurance is to be construed liberally in favor of the insured and every reasonable doubt as to the meaning of the language used resolved in his favor." Weum, 54 N.W.2d at 29. Courts will "avoid an interpretation which would forfeit rights which the insured may have believed he was securing . . . ." Id.

By the express terms of Dr. Dowdle's Disability Policy and Own Occupation Rider, Dr. Dowdle is covered by the policy and entitled to "Total Disability" benefits where he is "unable to perform the material and substantial duties" of "[his] occupation" at the time the disability begins. Dowdle Aff. Ex. C. It is undisputed that on the date of the accident, September 9, 2000,

Dr. Dowdle's occupation was "orthopedic surgeon." Id. Ex. B.

Plaintiff relies on the Minnesota Supreme Court case of Weum v. Mutual Benefit Health & Accident Association, Omaha, 54 N.W.2d 20 (Minn. 1952). In Weum, the court determined the plaintiff's entitlement to total disability benefits under the terms of his disability insurance policy. The plaintiff's occupation was that of "physician and surgeon" with duties connected specifically to "obstetrics and gynecology." Weum, 54 N.W.2d at 22. Dr. Weum's policy applied where the insured was "wholly and continuously disable[d]" and suffered "total loss of time." Id. at 23.

> [Weum] sustained a rupture of the biceps tendon of his right arm and an acute sprain of the acromic clavicular joint (joining collarbone to shoulder) as a result of an accident . . . [rendering Weum] unable to turn his arm over in front of him. . . . Since [Weum] was unable to make [various hand] movements, he was unable to perform the work required of an obstetrician."

Id. at 24-25. Upon returning to his office after being unable to perform any work whatsoever for a period of time, Dr. Weum, like Dr. Dowdle, was able to see some patients in a limited capacity. Id. at 25. Dr. Weum did supervisory work and assisted with operations, but was unable to conduct any operations alone, and his net income from his practice dropped considerably as a result. Id. at 25-26. In affirming entitlement to total disability benefits where he was still able to do parts of his job but not able to conduct any operations alone and unaided, the Weum court held that "[t]otal disability in an occupation is to be measured by the absence of individual earning capacity rather than by the absence of income." Id. at 25, 31. A jury instruction was upheld which explained that, to qualify for total disability coverage:

> It is enough that he be unable to perform the substantial and material acts necessary to the successful prosecution of his occupation or employment in the customary and usual way.

Weum, 54 N.W.2d at 26, 32. Specifically, Dr. Weum's inability to "perform the most important part of his specialty as an obstetrician," delivering babies, was held sufficient to satisfy the standard required for "total disability" coverage. Id. at 31. The court further found that the inability "to perform operations" was "the most substantial and material part" of his specialty as a gynecologist. Id. Neither the ability to perform other duties of both occupations, nor the earning of a substantial income, were held sufficient to defeat Weum's "total disability" coverage. Id. at 31-32.

In Blazek v. North American Life & Casualty Company, 87 N.W.2d 36, (Minn. 1957), the Minnesota Supreme Court considered a total disability policy as applied to an injured bricklayer who was able to perform part-time work for about half his pre-injury earnings, but perform no contracting work which he had done routinely before his injury. Blazek, 87 N.W. 2d at 39-40. Blazek's strongly worded policy covered for "total loss of time" where the insured was "totally and continuously disable[d] . . . and prevent[ed] from . . . performing every duty pertaining to his occupation," or "partial loss of time" where the insured could not perform "an important daily duty pertaining to his occupation." Id. at 40 n.1. The Blazek court held that where the plaintiff's duties included "supervis[ing] and brick laying," and the plaintiff was unable to do any supervisory work, that "the jury was justified in finding that the plaintiff was totally disabled." Id. at 44.

In the language of the Minnesota Supreme Court:

> Total disability does not mean a state of absolute helplessness or inability to perform any task relating to one's employment. When used in the occupational sense, it means the inability to perform the substantial and material parts of one's occupation in the customary and usual manner and with substantial continuity. . . . The mere

> fact that the insured is earning some income does not negate the existence of total disability.

Laidlaw v. The Commercial Ins. Co. of Newark, 255 N.W.2d 807, 812 (Minn. 1977) (citing Blazek, 87 N.W.2d at 41 n.2) (emphasis added). The uncontroverted evidence of Dr. Dowdle's physical condition and abilities shows that he meets these standards regarding his occupation as an orthopedic surgeon.

Dr. Dowdle's insurance application identifies the "specific duties" of his occupation as including seeing patients, surgery, interpretation of data, reading x-rays, and promotion of referrals. Id. Plaintiff asserts that surgery and pre- and post-surgery related examinations constituted the "material and substantial duty" of his occupation as an orthopedic surgeon. Defendant argues that Dr. Dowdle's listing of multiple tasks as his duties and inclusion of surgery as only one of the duties precludes surgery as the material and substantial duty. Defendant's argument is unavailing. It is clear from the record that the "most substantial and material part" of Dr. Dowdle's occupation was conducting surgery. Weum, 54 N.W.2d at 31. The duties listed by Dr. Dowdle such as seeing patients, interpreting data and reading x-rays are manifestly secondary or supplementary tasks incident to the primary function of an orthopedic surgeon of conducting surgery.

The remarkable income disparity between Dr. Dowdle's practice before and after his injury is strong evidence of the importance of his ability to perform surgery and its centrality to his occupatoin. While able to perform surgery, Dr. Dowdle earned approximately $85,915 per month. Brockman Aff. ¶ 3. After his accident, Dr. Dowdle has earned on average between $7,147 and $11,696 per month. Id. ¶ 4; see Pl.'s Mem. in Supp. at 9-10 n.2. Dr. Dowdle's

earning capacity has been greatly diminished. Since being unable to perform surgery, Dr. Dowdle has earned approximately 14% of his monthly pre-injury income. Dr. Dowdle's capacity to earn significant income in his diminished capacity is irrelevant to the issue of whether or not he is "totally disabled." Laidlaw, 255 N.W.2d at 812.

Since Dr. Dowdle is unable to perform any orthopedic surgery, he is unable to perform the substantial and material parts of his occupation in the customary and usual manner and with substantial continuity. Accordingly, Dr. Dowdle is entitled to "total disability" benefits under the terms of his Disability Policy. Because the Expense Policy uses identical language, Dr. Dowdle likewise qualifies for "total disability" coverage under its terms.

Defendant also argues that the existence of the Residual Rider preempts the receipt of total disability benefits despite Dr. Dowdle's satisfaction of the "total disability" coverage requirements. The existence of additional partial disability coverage does not negate total disability coverage where one might also qualify for partial disability coverage. Cf. Blazek, 87 N.W.2d at 40 n.1 (allowing total disability coverage for an injured bricklayer able to do some work but not contracting work where total disability coverage required the inability to perform the substantial and material parts of his occupation but partial disability coverage also existed if he were prevented from performing an important daily duty pertaining to his occupation). Common sense dictates that a substantial and material duty of an occupation would also qualify as "an important daily duty." It is tautological that an insured meeting the qualifications for total disability would always meet the qualifications for partial disability. Defendant's reasoning that qualification for a partial disability should preclude total disability coverage is fallacious and

would render total disability coverage a nullity.[3] If Dr. Dowdle's payment of additional premiums to secure extended residual insurance to cover partial injuries were to function to void the operation of his total disability coverage in circumstances where he qualified for total coverage, perversity would result. Plaintiff's Motion is granted.

---

[3] The opposite is not true, however, because allowing total disability coverage in Dr. Dowdle's case does not render the Residual Rider a nullity. As in Blazek, Dr. Dowdle's Residual Rider allows benefits if the insured is unable to perform one of the important daily duties of his occupation. Dowdle Aff. Ex. C. Coverage also is allowed where the insured cannot engage in the occupation as defined "for as much time as was usual prior to the start of disability." Id. These scenarios would apply if Dr. Dowdle could perform surgery but not perform another of the important daily duties of his occupation, or if he could perform surgery, but perform a fewer number of surgeries than prior to his injury. Neither is the case here. The Residual Rider would also apply if Dr. Dowdle's injury resulted in a loss of earnings per month of at least 20% of his adjusted prior average earnings per month. This provision would apply where Dr. Dowdle could perform surgery, but nonetheless lost at least 20% of his monthly earnings as a result of his injury. Again, this is not the case here. While Dr. Dowdle has lost substantially more than 20% of his monthly earnings, that is to be expected with any injury qualifying for the higher standard of total disability coverage.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment [Docket No. 27] is **GRANTED** and
2. Defendant's Motion for Summary Judgment [Docket No. 35] is **DENIED**.
3. The amounts due under the Disability Policy and the Expense Policy are not before the Court on Plaintiff's Motion and final resolution of those amounts is reserved for future determination.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: August 28, 2003