Cv. #02-2347
ADM/JSM

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

RECEIVED
BY MAIL
JUN 13 2005
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MN

No. 04-2628

| | | |
|---|---|---|
| John A. Dowdle, Jr., M.D., | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| National Life Insurance Company, | * | |
| | * | |
| Appellant. | * | |

Submitted: February 17, 2005
Filed: May 19, 2005

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

RILEY, Circuit Judge.

John A. Dowdle, Jr., M.D. (Dr. Dowdle), an orthopedic surgeon, brought this diversity action against National Life Insurance Company (National Life), seeking a declaratory judgment determining Dr. Dowdle is entitled to total disability benefits under the terms of his disability policies with National Life. After National Life removed the action to federal court, the parties cross-moved for summary judgment. The district court[1] granted summary judgment to Dr. Dowdle, concluding he is

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

SCANNED
JUN 13 2005
U.S. DISTRICT COURT MPLS

entitled to total disability benefits, because he cannot perform the material and substantial duties of his occupation. National Life appeals, maintaining Dr. Dowdle is not entitled to total disability benefits. Because we agree with the district court's determination that Dr. Dowdle is totally disabled under the policies as interpreted by Minnesota law, we affirm the district court's grant of summary judgment in favor of Dr. Dowdle.

## I. BACKGROUND

On December 31, 1987, National Life issued a disability income policy (disability policy) to Dr. Dowdle. In the event Dr. Dowdle became totally disabled, the disability policy would provide a maximum monthly benefit of $13,050. The disability policy defines "total disability" as the inability "to perform the material and substantial duties of an occupation." Dr. Dowdle paid an additional premium to obtain an "own occupation rider" to the disability policy, which expands Dr. Dowdle's protection by defining "occupation" as "the occupation of the Insured at the time a disability, as defined in the Total Disability provision of the policy, begins." Dr. Dowdle also purchased a "residual disability income rider," which defines "partial disability" as the inability "1. to perform one or more of the important daily duties of an occupation as defined in this policy; or 2. to engage in an occupation as defined in this policy for as much time as was usual prior to the start of disability."

On June 30, 1988, National Life issued a professional overhead expense disability policy (overhead expense policy) to Dr. Dowdle. This overhead expense policy would reimburse Dr. Dowdle's overhead expenses in the event he became disabled. The overhead expense policy uses the same definition for "total disability" as the disability policy. The overhead expense policy defines "total disability" as the inability "to perform the material and substantial duties of the Insured's occupation." The overhead expense policy defines "occupation" as "the occupation of the Insured at the time such disability begins." The overhead expense policy defines "partial

disability" as the inability "1. to perform one or more of the important daily duties of the Insured's occupation as defined in this policy; or 2. to engage in the Insured's occupation as defined in this policy for as much time as was usual prior to the start of disability."

On the applications for both the disability income and the overhead expense policies (collectively, policies), Dr. Dowdle identified his occupation as an orthopedic surgeon. The applications also required Dr. Dowdle to list his specific duties. Dr. Dowdle identified his duties as seeing patients, performing surgery, reading x-rays, interpreting data, and promoting referrals.

Before becoming disabled, Dr. Dowdle was a shareholder of Summit Orthopedics. Dr. Dowdle worked 50 to 60 hours per week, plus call duties. In an average week, Dr. Dowdle devoted 5 half-days to surgery and 5 half-days to office consultations, seeing 15 to 20 patients in each half-day session. Dr. Dowdle earned an average of $85,915 per month from Summit Orthopedics. Surgery and surgery-related care comprised 85% of Dr. Dowdle's practice.

Outside his orthopedic surgery practice, Dr. Dowdle also performed independent medical evaluations (IMEs) for EvaluMed, Inc., a company Dr. Dowdle co-founded. Dr. Dowdle devoted an average of 1½ hours to an IME: ½ hour for discussion and examination, and 1 hour for review of medical records and preparation of the report. Dr. Dowdle often completed IMEs in the evening at his home. Dr. Dowdle performed an average of 7 IMEs per week. Performing IMEs was not part of Dr. Dowdle's normal duties as an orthopedic surgeon.

On September 9, 2000, Dr. Dowdle suffered injuries, including a closed head injury and a right calcaneal (heel bone) fracture, when the private aircraft he was piloting crashed shortly after takeoff. As a result of Dr. Dowdle's injuries, he is

unable to stand at an operating table for an extended period of time. Consequently, he can no longer perform orthopedic surgery.

On November 16, 2000, Dr. Dowdle filed a claim with National Life for total disability benefits. National Life started paying Dr. Dowdle $28,050 per month, the maximum total disability benefits.

On February 7, 2001, Dr. Dowdle resumed performing office visits. Initially, Dr. Dowdle worked 1 half-day per week. He now works 6 half-days per week at Summit Orthopedics, seeing 15 to 20 patients during each half-day session. Since Dr. Dowdle resumed working after the accident, Summit Orthopedics considers Dr. Dowdle an independent contractor and pays Dr. Dowdle based upon a percentage of fees he generates. Dr. Dowdle earns an average of about $11,700 per month from Summit Orthopedics.

Dr. Dowdle describes his post-accident duties as follows:

> [I]t's taking care of patients who have spinal injury and illnesses and doing the office portion of it and handling them and directing their care. And when they get to a place, if they need surgery, I hand it off to two of my partners who do the surgical treatment. Otherwise I manage their medicines. I manage their work injury and rehab and injections and all the rest, the same thing as I've done previously.

Dr. Dowdle also resumed performing IMEs for EvaluMed.

In light of his ability to resume office consultations, National Life determined that, as of February 7, 2001, Dr. Dowdle was residually disabled rather than totally disabled. National Life reasoned that, because Dr. Dowdle resumed his office practice and performed IMEs, duties he performed before his disability, Dr. Dowdle

is only partially disabled. National Life continues to provide monthly residual disability benefits under the policies.

National Life argues Dr. Dowdle is not totally disabled under the terms of the policies, because Dr. Dowdle is able to conduct office consultations and other non-surgical tasks. Conversely, Dr. Dowdle argues that, under Minnesota law, he is entitled to total disability benefits, even though he can perform some non-surgical duties.

Agreeing with Dr. Dowdle, the district court concluded, "[s]ince Dr. Dowdle is unable to perform any orthopedic surgery, he is unable to perform the substantial and material parts of his occupation in the customary and usual manner and with substantial continuity. Accordingly, Dr. Dowdle is entitled to 'total disability' benefits" under both policies. National Life appeals, arguing the district court erred in: (1) construing the policies in favor of Dr. Dowdle; and (2) concluding Dr. Dowdle is totally disabled, because he still is able to conduct an office practice and perform IMEs.

## II. DISCUSSION

As an initial matter, we note the procedural posture of this appeal is different from the cases cited by the parties. In each of these cases, the appellate court reviewed a verdict to determine if the facts supported a finding of total disability. In the instant case, National Life appeals from an order granting summary judgment. We find it appropriate to decide this case on summary judgment, because the parties do not dispute the facts, the parties agree the issues are purely legal, and neither party desires to take this case to trial.

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the nonmoving party. Pieper, Inc. v. Land O'Lakes Farmland Feed, LLC, 390 F.3d 1062, 1065 (8th Cir. 2004). Summary

judgment is proper if the evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pieper, 390 F.3d at 1065. We review de novo a district court's interpretation of a contractual provision in an insurance policy as a question of law. Pac. Ins. Co. v. Burnet Title, Inc., 380 F.3d 1061, 1064 (8th Cir. 2004). We apply Minnesota law in this diversity action. Id.

National Life first contends the district court erred in construing the policies. In its memorandum opinion, the district court applied the following Minnesota rules of construction:

> The general rule is that a policy of insurance is to be construed liberally in favor of the insured and every reasonable doubt as to the meaning of the language used resolved in his favor. . . . Courts will avoid an interpretation which would forfeit rights which the insured may have believed he was securing.

(citations omitted). National Life argues the district court erroneously construed the policies in favor of Dr. Dowdle, because the district court failed to make a threshold finding that the policy provisions at issue are ambiguous.

Under Minnesota law, if the "insurance policy language is clear and unambiguous, the language used must be given its usual and accepted meaning." Wanzek Const., Inc. v. Employers Ins. of Wausau, 679 N.W.2d 322, 324 (Minn. 2004) (citations omitted). However, if the "policy language is ambiguous, it must be interpreted in favor of coverage." Id. at 325.

The parties agree orthopedic surgery was a material and substantial duty of Dr. Dowdle's occupation. However, the parties dispute whether Dr. Dowdle is totally disabled, because he still can conduct an office practice and perform IMEs. National Life contends the policies require that Dr. Dowdle be unable to perform "all" of the

material and substantial duties of his occupation in order to qualify as totally disabled. Conversely, Dr. Dowdle contends the district court correctly held "total disability" means the inability to perform "the most important part" of his occupation.

Our review of the disputed policy language leads us to conclude ambiguity exists. The policies' definitions of "total disability" are susceptible to differing interpretations, because the policies do not speak in terms of "any," "all," "some," or "the most important part" of Dr. Dowdle's duties. Because the policies' definitions of "total disability" are susceptible to multiple interpretations, we conclude the district court properly construed the policies in favor of Dr. Dowdle.[2] See Struble v. Occidental Life Ins. Co., 120 N.W.2d 609, 616 (Minn. 1963) (holding where insurance policy provision is "susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted").

In interpreting total disability policies with similar language, courts have taken one of two approaches. National Life urges us to apply the line of cases in which courts have interpreted similar language in total disability policies to mean an insured must be unable to perform "all" of his material and substantial duties to be considered totally disabled. See Giustra v. UNUM Life Ins. Co. of Am., 815 A.2d 811, 814 (Me. 2003); Falik v. Penn Mut. Life Ins. Co., 204 F. Supp. 2d 1155, 1157 (E.D. Wis. 2002); Yahiro v. Northwestern Mut. Life Ins. Co., 168 F. Supp. 2d 511, 517-18 (D. Md. 2001); Dym v. Provident Life & Accident Ins. Co., 19 F. Supp. 2d 1147, 1150

---

[2]We find unpersuasive National Life's argument that our recent decision in Miller v. Northwestern Mutual Life Insurance Co., 392 F.3d 973 (8th Cir. 2004), lends support to its position that the policies should not be construed against National Life. In Miller, we determined the policy language defining "total disability" was not ambiguous. Id. at 976. However, the policy language in Miller was materially different from language used in National Life's policies. Id. at 974-75 (defining an insured as "not totally disabled" when the insured "can perform one or more of the principal duties of the regular occupation"). Therefore, Miller is inapposite.

(S.D. Cal. 1998). These courts have held an insured's ability to perform just one material and substantial duty precludes a determination of total disability.

The other approach, adopted by the Minnesota Supreme Court in Weum v. Mutual Benefit Health & Accident Ass'n, 54 N.W.2d 20, 31-2 (Minn. 1952), assesses a total disability if the insured's inability to perform certain duties precludes continuation in his or her regular occupation. In Weum, the insured, an obstetrician and gynecologist, sustained an injury which impaired his ability to deliver babies. Id. at 24-25. For some time, the insurance company paid total disability benefits. Id. at 24. When the insurance company ceased making total disability benefit payments, Dr. Weum sued. Id. Dr. Weum claimed he was totally disabled because, after his accident, he was unable to perform the work required of an obstetrician. Id. at 25.

The policy at issue in Weum provided for total disability "[i]f such injuries . . . *shall wholly and continuously disable the Insured.*" Id. at 23 (emphasis in original). The Weum court upheld an instruction to the jury that Dr. Weum should be considered "wholly and continuously disabled" if he was "unable to perform the substantial and material acts necessary to the successful prosecution of his occupation or employment in the customary and usual way." Id. at 26. The court also upheld the jury verdict finding Dr. Weum totally disabled, even though he resumed an office practice. Id. at 25-26, 31. The court noted Dr. Weum "was so physically handicapped as a result of his injury that he would have been unable to perform the most important part of his specialty." Id. at 31. The Weum court specifically rejected the argument that the fact an insured earns a substantial post-accident income bars a finding of total disability. Id. at 32.

In the years since its 1952 decision in Weum, the Minnesota Supreme Court consistently has held, when applying an occupational disability clause like the provision present in the instant case, a determination of total disability does not require "a state of absolute helplessness or inability to perform any task relating to

one's employment." Laidlaw v. Commercial Ins. Co. of Newark, 255 N.W.2d 807, 812 (Minn. 1977); see also Ryan v. ITT Life Ins. Corp., 450 N.W.2d 126, 130 (Minn. 1990) (stating "Minnesota law has long held that total disability in the occupational sense does not mean absolute physical inability to engage in any kind of business pertaining to the occupation"); Blazek v. N. Am. Life & Cas. Co., 87 N.W.2d 36, 41 n.2 (Minn. 1957) (approving jury instruction explaining the phrase "totally disabled" does not require literal construction). Under Minnesota law, an insured may be entitled to total disability benefits, regardless of the number of important duties an insured still can perform in isolation. See Laidlaw, 255 N.W.2d at 812-13 (affirming award of total disability benefits to injured attorney, even though he continued to earn substantial income); Blazek, 87 N.W.2d at 44 (holding bricklayer was not precluded from recovering total disability benefits, even though he returned to laying brick on a part-time basis).

Under the Minnesota law set forth in Weum and its progeny, the district court correctly concluded Dr. Dowdle is totally disabled. At the time he incurred his disability, Dr. Dowdle was engaged predominantly in the occupation of an orthopedic surgeon. The parties agree Dr. Dowdle's IME practice was separate and distinct from his surgery practice. Therefore, the fact that Dr. Dowdle performed IMEs both before and after the accident has no bearing on whether Dr. Dowdle can perform the "material and substantial duties" of being an orthopedic surgeon. National Life concedes Dr. Dowdle can no longer perform orthopedic surgery, which is clearly the most important substantial and material duty of Dr. Dowdle's occupation as an orthopedic surgeon. Because Dr. Dowdle's disability prevents him from performing the most important part of his occupation, he is entitled to total disability benefits under Minnesota law.

## III. CONCLUSION

We affirm the judgment of the district court.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans